**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

─────────────────────────────────────

MICHAEL HORTON,

                      Petitioner,

   v.                                       No. 06-CV-0163
                                           (GLS/DRH)
ROBERT ERCOLE, Superintendent of  Green Haven
Correctional Facility,

                      Respondent.

─────────────────────────────────────

**APPEARANCES:**            **OF COUNSEL:**

MICHAEL HORTON
Petitioner Pro Se
02-A-3751
Green Haven Correctional Facility
Stormville, New York 12582

HON. ANDREW M. CUOMO       LISA E. FLEISCHMANN, ESQ.
Attorney General for the           Ass't Attorney General
  State of New York
120 Broadway
New York, New York 10271

**DAVID R. HOMER**
**U.S. MAGISTRATE JUDGE**

### REPORT-RECOMMENDATION AND ORDER[1]

     Petitioner pro se Michael Horton ("Horton") is currently an inmate in the

custody of the New York State Department of Correctional Services ("DOCS") at

Green Haven Correctional Facility.  Horton was convicted on April 4, 2001 of assault

(two counts) and criminal use of a firearm after a jury trial in Albany County and is

presently serving an aggregate determinate term of thirty-two years in prison.  Horton

───────────────────────

[1] This matter was referred to the undersigned for report and recommendation
pursuant to 28 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.4.

now seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254 on the grounds that

(1) the evidence was legally insufficient, (2) the verdict was against the weight of the

evidence, (3) the sentence was excessive, cruel and unusual, and (4) trial counsel

was ineffective.  For the reasons which follow, it is recommended that the petition be

denied.


## I.  **Background**

In 2001, Kode Sealey and Muneer Simms had been friends for seven years.

Sealey and Simms both knew Horton, also known as "Mobs" or "Mighty Mike," from

the neighborhood, and Simms played basketball with Horton.  T. 301-303, 447-452.[2]

On April 22, 2001, at approximately 11:00 p.m., Sealey was sitting on the front

steps of Denmark Johnson's house along with Devon Richards and Marlin Williams.

T. 305-06.   Horton and an unidentified companion walked out of a nearby alley and

approached Sealey.  T. 301-306, 387, 449.  Horton was wearing a gray bandana with

eye slits cut into it over his face, but Sealey and Richards recognized his voice, build

and hair.  T. 307, 390-91.  He grabbed Sealey, walked him into the alley, and put a

gun to his head, demanding money.  T. 307-309, 391-93.  Richards walked over to

see what was going on, and Horton told him to "back up."  T. 395.   Sealey refused to

give Horton anything and a scuffle ensued.  T. 308-310, 393-94.  Sealey told Horton,

"Mobs, I know this ain't you."  Horton replied, "Why are you calling out my name?"  T.

309.  Horton eventually left Sealey alone and walked toward Third Street in Albany.

---

[2]      "T." followed by a number refers to the pages of the trial transcript
included with respondent's answer.  Dkt. No. 8, Exh. 3a.

T. 311-12, 395.  Sealey, Richards and Marlin got into Richards's car and drove around the block.  T. 313-14, 396.  They saw Horton, without the mask, walking on Third Street.  As they drove past him, Horton fired a gunshot at the car and ran.  T. 313-14, 397.  Sealey, Richards and Marlin drove to Simms' house and told him what happened.  T. 316, 398-99.  Sealey did not report the incident to police, preferring to handle it himself by confronting Horton and challenging him to a fist fight.  T. 316, 399.

On April 23, 2001, at approximately 9:00 p.m., Sealey and Simms were riding their bicycles and they encountered Horton and six or seven of his friends.  T. 317-18, 454-57.  Sealey and Horton began arguing and Sealey challenged Horton to a fist fight. Sealey was unarmed.  T. 318. Horton told Sealey that he was going to shoot and kill him.  T. 317-18, 456.  Simms separated Sealey and Horton when he saw Horton reach for a black-handled gun.  T. 457.  There was no fight because Horton would not give up the gun.  T. 320, 457.

Sealey and Simms rode their bicycles toward Johnson's house and Horton followed them.  T. 320, 458-59.  Horton told Sealey and Simms that he was going to kill them.  T. 320-21, 461.  Simms got off his bicycle as Horton reached with his right hand toward his pocket, and grabbed Horton's hand, trying to prevent him from pulling the gun.  T. 322, 461.  Horton freed his hand during the struggle, pointed the gun at Sealey and shot him in the stomach.  T. 322-23, 462.  Horton then shot Simms in the neck.  T. 324, 462-64.  Sealey and Simms fell to the ground, and Horton fired a third shot, but missed.  T. 192-96, 325, 465.  Horton fled.  T. 204-210.  The shooting took place within 200 yards of a police station.  T. 263-64, 268.

3

Sealey got up and went to Simms, who handed him a cell phone and told him to call 911.  T. 325-26, 605.  Simms helped Sealey onto his bicycle, gave Sealey a push, and told him to try to make it to the police station.  T. 325-26, 465-66.  Sealey collapsed at the corner of Third and Oak Streets.  T. 212-13, 221-24, 326.  Simms continued to ride to the police station, where he encountered Officer Michael Romano.  T. 213-15, 261-66, 467-69.   Simms was covered in blood.  When Officer Romano told Simms he was shot, Simms collapsed.  T. 265-66.  Sealey and Simms were transported to Albany Medical Center for treatment.  T. 278, 364, 421-24.

Simms suffered a cut to his lip and a tooth injury as well as a small gunshot wound to the left side of his neck.  T. 279-82.  He was conscious and alert upon arrival at the hospital.  T. 295, 428.  Tests revealed no injury to Simms' esophagus or trachea.  T. 283. An x-ray revealed a bullet fragment lodged near the spinal cord, but the fragment was not removed because to do so would have been too risky.  T. 287-88.  Simms was discharged two days later.  T. 292-94.  He took pain medication for five weeks, could not work as many hours as he could before the shooting, and suffered a scar.  T. 469-74.  The actual injuries Simms suffered were not life-threatening.  T. 285.

Sealey threw up blood and had no pulse in his wrist, indicating to paramedics that he was suffering internal bleeding.  T. 433-39.  Dr. Lawrence Robinson cut Sealey open from the pubic bone to the breast bone in order to gain access to the entire abdominal area.  T. 368-69.  Sealey had a small injury to his liver, which was not life-threatening and was expected to heal on its own.  T. 369-70.  He also suffered a life-threatening injury to the duodenum, the part of the intestine that

4

connects the stomach to the small intestine.  T. 370.  The injury resulted in spillage of the intestinal contents into the abdomen and, even with repair, there was a high risk of infection and death associated with this injury that often did not manifest until between one and two weeks after surgery.  T. 369, 371-72.  Sealey also suffered a life-threatening injury to the vena cava, which controls blood flow.  T. 372-73.  As a result of the injury to the duodenum, Sealey could not eat regular food while the injury healed, and a feeding tube was inserted into his stomach. T. 374-76.  A bullet fragment was removed from Sealey's back.  T. 373.

Sealey remained in the hospital for approximately two weeks.  T. 330, 376.  He missed one and one half months of work due to his injuries.  T. 331.  He could not walk well when he was released from the hospital, and has a large scar.  T. 330, 334. In December 2001, eight months after the shooting, Sealey was again admitted to the hospital with abdominal pain and vomiting.  T. 335, 377.  He had a fibrous band of scar tissue that had to be cut to remove blockage in the abdomen.  T. 335-36, 377-78.  There was a high probability that the scar tissue was related to the shooting injuries.  T. 378.

Sealey and Simms did not initially tell police Horton was the shooter.  T. 331, 339, 471-72.   When Simms was released from the hospital, he told Detective Anthony Ryan that Horton shot him. T. 479-81.

Rebecca Robinson knew Horton through Jessica Robillard.  T. 240.  Horton bragged that he was "testing" Sealey and Simms, and told Robinson that he shot Sealey and Simms and left them in the street.  T. 244-45.  A day or two later, Robinson called police and told them what Horton said.  T. 248, 256-57, 547.

Robinson did not give a written statement to police until almost a year later, after she was arrested and charged with the possession of 146 bags of crack cocaine with the intent to sell it.  T. 237, 249.  Robinson agreed to cooperate against her co-defendant in the drug case, and to give truthful testimony against Horton, in exchange for a plea to a reduced charge and no more than six months in jail followed by five years probation.  T. 237-38, 249-50.  Jessica Robillard, who testified for Horton, claimed that Robinson and Horton did not get along and that they had not been together at her house since February 2001.  T. 613-27.  She denied hearing Horton confess to the shootings.  T. 627.

Detective Ryan interviewed several witnesses, including Simms and Sealey, and developed Horton as a suspect.  T. 538-39, 547-52.  On May 9, 2001, he recovered several items of Horton's clothing from Nekeliah Dunkley, including a jacket that contained a gray bandana with eye slits cut into it.  T. 487-99, 560-62.

On May 18, 2001, a grand jury returned a sealed indictment charging Horton with attempted robbery (two counts), attempted murder, first degree assault (two counts), second degree assault, and criminal use of a firearm.

On July 23, 2001, Detective Ryan received information that Horton was staying at 448 Livingston Avenue in Albany.  He knocked on the door and identified himself to the man who answered.  Ryan started to tell the man why he was there when he saw another man dressed in black going toward the front porch.  T. 567.  Ryan chased and caught the man, whom he recognized as Horton.  Horton's hair, which was usually longer in braids or dredlocks, was cut short.  T. 568.

After a jury trial, Horton was convicted of first degree assault (two counts) and

6

criminal use of a firearm and was sentenced to a determinate term of twenty-five years on each count of assault, to run consecutively, and a concurrent determinate term of twenty-five years for the weapons charge.  T. 758-61; S., Jun. 27, 2002, at 13-14; S2., Sept. 11, 2002, at 2.[3]  On July 1, 2004, the Appellate Division reduced one count of first degree assault (count 5 relating to Simms), to second degree assault, remitted the case for re-sentencing on that count, and otherwise affirmed Horton's conviction.  People v. Horton, 780 N.Y.S.2d 654 (3d Dep't  2004).  Leave to appeal to the New York Court of Appeals was denied on September 16, 2004. People v. Horton, 818 N.E.2d 677 (N.Y. 2004).  Horton was later sentenced to a determinate term of seven years on the reduced charge of second degree assault, to run consecutively to the sentence for first degree assault.  Pet. ¶ 2; Dkt. No. 8, ¶1.

Horton filed a pro se motion to vacate his conviction pursuant to New York Criminal Procedure Law ("CPL") 440.10 on or about September 27, 2005, alleging that trial counsel was ineffective.  Dkt. No. 8, Exh. 3e.   The motion was denied on October 24, 2005.  Dkt. No. 8, Exh. 3g.  An application for permission to appeal from the denial of the motion was denied on October 24, 2005.  Dkt. No. 8, Exh. 3i.  This action followed.

---

[3]      "S." followed by a number refers to the pages of the June 27, 2002 sentencing transcript included with respondent's answer. Dkt. No. 8, Exh. 3a. "S2." followed by a number refers to the September 11, 2002 sentencing transcript also included with respondent's answer. Horton was originally sentenced on June 27, 2002, and the trial court imposed an additional five-year determinate sentence on each assault count pursuant to Penal Law §265.09. S. 14.  On September 11, 2002, the trial court re-sentenced Horton, eliminating the additional five-year terms, concluding that it was error to have imposed them. S2. 2.

## II. Discussion

### A. Standard of Review

When reviewing a habeas petition, a federal court is limited to deciding whether a conviction violated the Constitution, laws or treaties of the United States. 28 U.S.C. § 2241.  Relief does not lie for errors of state law.  Estelle v. McGuire, 502 U.S. 62, 67-68 (1991); DiGuglielmo v. Smith, 366 F.3d 130, 136-37 (2d Cir. 2004). Horton may obtain habeas relief by showing that the state court's decision was "contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court."  28 U.S.C. § 2254(d)(1); Carey v. Musladin, 127 S. Ct. 649, 653 (2006); Campbell v. Burgess, 367 F. Supp. 2d 376, 380 (W.D.N.Y. 2004).  "By 'contrary to,' the state court decision may be either contrary to Supreme Court precedent on a question of law or the state court decision is opposite to a relevant Supreme Court case with 'materially indistinguishable' facts." Johnson v. West, No. 9:04-CV-751, 2007 WL 952058, at *2 (N.D.N.Y. Mar. 29, 2007)(quoting Williams v. Taylor, 529 U.S. 362, 405-406 (2000)).  A state court unreasonably applies federal law when the state court correctly identifies the governing legal rule in a particular case but applies the rule to the facts in an "objectively unreasonable" manner.  Johnson, 2007 WL 952058, at *2 (quoting Lockyer v. Andrade, 538 U.S. 63, 75 (2003)).  The state court's determination of a factual issue is presumed to be correct, and the petitioner has the burden of rebutting that presumption by clear and convincing evidence.  28 U.S.C. § 2254(e)(1); DeBerry v. Portuondo, 403 F.3d 57, 66 (2d Cir. 2005); Boyette v. Lefevre, 246 F.3d 76, 88 (2d

8

Cir. 2001).

## B.  Sufficiency of Evidence

Horton claims that the evidence was insufficient to sustain his conviction for assault relating to Simms (count five of the indictment) because there was no proof that Simms suffered "serious physical injury."  Pet. at ¶ 12, Attach. A.  He also claims, more generally, that there was no proof that he was the shooter or that "both victims were subjected to a substantial risk of death."  Id. at Attach. A, p. 2.

### 1.  Count 5

Horton was convicted of first degree assault for shooting Simms.  T. 733-34. On direct appeal, he challenged the legal sufficiency of the evidence to sustain that conviction.  Dkt. No. 8, Exh. 3a, at 32-49.  He argued, as he does in his habeas petition, that there was no proof that Simms suffered "serious physical injury."  Id. The Appellate Division agreed.  Horton, 780 N.Y.S.2d at 654.  It found that the medical evidence established that "Simms's gunshot wound, described as a small hole, was not life threatening," that Simms was "fully conscious and responsive" at the emergency room, and that diagnostic tests showed no injuries to the esophagus, trachea, or the major blood vessels and nerves in his neck.  Id.  While the surgeon who treated Simms expressed concern about operating to remove the bullet fragment from Simms's neck, there was no medical evidence regarding the potential health effects of leaving the fragment.  Id.  The court noted that Simms was discharged from

the hospital after two days, and had a cut lip and chipped tooth, and was told to follow up with the trauma clinic and the dentistry clinic if necessary.  Id. The Appellate Division concluded that since there was no evidence of a protracted impairment of Simms's health, and no evidence of "protracted disfigurement or a protracted loss or impairment of the function of any bodily organ," there was insufficient evidence that Simms suffered serious physical injury.  Id.

The Appellate Division also concluded, however, that there was no dispute that Simms "sustained a 'physical injury,' having endured substantial pain (Penal Law § 10.00(10))."  Id.  It reduced Horton's conviction to second degree assault, as charged in count 6 of the indictment (N.Y. PENAL LAW §120.05(2)).  Id.  Thus, the Appellate Division has already granted Horton appropriate relief on this claim, and it should be dismissed.

To the extent that Horton's petition can be read to challenge the sufficiency of the evidence on the reduced charge of second degree assault, that claim is also without merit. A defendant who claims that the evidence was not sufficient to sustain a conviction bears a very heavy burden.  United States v. Quattrone, 441 F.3d 153, 169 (2d Cir. 2006); United States v. Pierce, 224 F.3d 158, 164 (2d Cir. 2000). The Second Circuit has maintained that the weight of the evidence and the credibility of the witnesses are determinations for the jury and are not grounds for reversal. See United States v. Vasquez, 267 F.3d 79, 91 (2d Cir. 2001). "[T]he critical inquiry on review of the sufficiency of the evidence . . . [is] to determine whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 318 (1979). This inquiry asks a court to determine

if, "after viewing the evidence in the light most favorable to the prosecution, . . . any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Id. at 319; see also Fama v. Comm'r of Corr. Servs., 235 F.3d 804, 811 (2d Cir. 2000).

To sustain Horton's conviction for second degree assault, the evidence must show that he intended to cause "physical injury" to Simms and that he did so by using a "deadly weapon or dangerous instrument," including a loaded gun.  N.Y. PENAL LAW §§ 10.00(12), 120.05(2).   "Physical injury" means impairment of physical condition or substantial pain.  N.Y. PENAL LAW § 10.00(9).  Intent may be inferred from the circumstances, including the actions of the accused, and it may be proven by direct or circumstantial evidence. Stone v. Stinson, 121 F. Supp. 2d 226, 247 (W.D.N.Y. 2000); People v. Price, 35 A.D.3d 1230, 1231 (4th Dep't 2006).

Here, Horton told Simms he was going to kill him, pulled out a gun and shot him in the neck.  T. 461, 464-65.  Simms underwent surgery to rule out serious injuries. T. 282-83.  He testified that he was in the hospital for two days, took pain medication for five weeks, and when he returned to work, he had fewer hours due to the pain in his neck.  T. 469-71, 474.  Simms showed the scar on his neck to the jury. T. 474.   This evidence was sufficient to sustain his conviction for assault in the second degree.  See, e.g., Simmons v. Fisher, No. 02-CIV. 4811, 2006 WL 2129770, at *18-19 (S.D.N.Y. Jul. 26, 2006)(finding evidence sufficient to sustain second degree assault conviction where petitioner shot victim in the buttocks, causing physical injury); People v. Rojas, 61 N.Y.2d 726, 727(1984)(finding that gunshot wound coupled with visible scar, medical testimony that the injury could cause pain

and that the wound was oozing sufficient to sustain conviction for second degree assault); People v. McEachin, 562 N.Y.S.2d 816 (3d Dept. 1990)(finding evidence sufficient to sustain second degree assault conviction where stabbing victim "bled from his neck, felt pain for a couple of days, required medical attention and was scarred by the puncture wound."). The Appellate Division's reduction of the first degree assault charge to second degree assault was not contrary to, or an unreasonable interpretation of, clearly established federal law. Therefore, the petition on this ground should be denied.

## 2.  Count 4

Horton also claims that there was insufficient evidence that he was the shooter or that "**both** victims were subjected to a substantial risk of death." Pet. Attach. A at 2 (emphasis added). These claims, which include an apparent challenge to the sufficiency of the evidence of first degree assault as it relates to Sealey (count 4 of the indictment), were never presented to the state courts. See Dkt. No. 8, Exh. 3a.

### i.  Procedural Bar

An application for a writ of habeas corpus may not be granted until a prisoner has exhausted all remedies available in state court unless there is an "absence of available state court corrective process" or "circumstances exist that render such process ineffective to protect the rights of the applicant." 28 U.S.C. § 2254(b). To satisfy the exhaustion requirement, a petitioner must do so both procedurally and

substantively.  Procedural exhaustion requires that a petitioner raise all claims in the state court prior to raising them in a habeas petition.  Substantive exhaustion requires that a petitioner "fairly present" any constitutional claims to the state court.  <u>Dorsey v. Kelly</u>, 112 F.3d 50, 52 (2d Cir. 1997)(quoting <u>Picard v. Connor</u>, 404 U.S. 270, 275 (1971)). A claim is deemed exhausted when no real avenue remains by which it could be raised.  <u>See</u> <u>Aparicio v. Artuz</u>, 269 F.3d 78, 90 (2d Cir. 2001)(citing <u>Reyes v. Keane</u>, 118 F.3d 136, 139 (2d Cir. 1997); <u>Bossett v. Walker</u>, 41 F.3d 825, 828 (2d Cir. 1994).

Horton cannot now raise this claim in a second direct appeal, because in New York a defendant is "entitled to one (and only one) appeal to the Appellate Division." <u>Aparicio</u>, 269 F.3d at 91.  It would be futile for Horton to raise this claim in a second motion to vacate his conviction under New York's Criminal Procedure Law ("CPL") § 440.10 because New York law prohibits collateral attacks on a conviction when the defendant unjustifiably failed to raise the issue on direct appeal, or where the defendant could have raised the claim in a previous CPL 440 motion but did not. N.Y. CRIM. PROC. LAW § 440.10(2)(c); (3)(c).  Since no remaining avenue exists in which Horton could raise this claim, it is deemed exhausted but procedurally defaulted.  <u>Aparicio</u>, 269 F.3d at 90; <u>Spence v. Superintendent, Great Meadow Corr</u>. <u>Fac.</u>, 219 F.3d 162, 170 (2d Cir. 2000).

This Court may review the procedurally barred claim only if Horton demonstrates cause for the default and resulting prejudice, or that the failure of the federal court to review the claim will result in a "fundamental miscarriage of justice" <i>i.e.</i>, that he is innocent.  <u>Calderon v. Thompson</u>, 523 U.S. 538, 559 (1998); <u>Coleman</u>

13

v. United States, 501 U.S. 722, 748-50 (1991).  To establish "cause" sufficient to excuse a procedural default, a petitioner must show that some objective external factor impeded his or her ability to comply with the relevant procedural rule. Coleman, 501 U.S. at 753, Restrepo v. Kelly, 178 F.3d 634, 639 (2d Cir. 1999). When a petitioner has failed to establish adequate cause for his procedural default, the court need not determine whether he suffered prejudice, since federal habeas relief is generally unavailable as to procedurally defaulted claims unless both cause and prejudice are demonstrated.  Stepney v. Lopes, 760 F.2d 40, 45 (2d Cir. 1985); Long v. Lord, No. 03-cv-0461, 2006 WL 1977435, at *6 (N.D.N.Y. Mar. 21, 2006).

Horton has not established cause for the failure to exhaust this claim, and has never argued, in either the state courts or this proceeding, that appellate counsel rendered ineffective assistance by failing to argue in the state courts that the evidence was insufficient to support his conviction for first degree assault as it relates to Sealey. Since Horton has not established cause, the court need not decide whether he suffered actual prejudice.  See Stepney, 760 F.2d at 45; Staley v. Greiner, No. 01 Civ. 6165, 2003 WL 470568, at *7 (S.D.N.Y. Feb. 6, 2003).  He has also failed to present any new evidence to show actual innocence of this crime. Schulp v. Delo, 513 U.S. 298, 327 (1995); Spence, 219 F.3d at 170.  Review of this claim is thus procedurally barred.

## ii.  Merits

Even if this claim was not procedurally barred, no relief is due because the claim lacks merit.  To sustain Horton's conviction for first degree assault, the state

14

had to show that he intended to cause "serious physical injury" to Sealey and that he did so by using a "deadly weapon," including a loaded handgun.  N.Y. PENAL LAW § 120.10(1).  "Serious physical injury" is injury that "creates a substantial risk of death" or which causes "protracted impairment of health."  N.Y. PENAL LAW § 10.00(12). The evidence showed that Horton told Sealey he was going to kill him.  T. 320-21, 461.  Horton shot Sealey in the stomach, causing life-threatening injuries.  T. 322-23, 462, 433-39, 369-76.  Sealey underwent extensive surgery, had a feeding tube inserted, remained in the hospital for two weeks, and had a scar from the pubic bone to the breast bone.  T. 330, 373-76.  Sealey missed one and one half months from work, and suffered complications related to the shooting that required hospitalization, and additional surgery, eight months later.  T. 330-31, 335, 376-78.  This evidence was sufficient to establish that Sealey suffered "serious physical injury" as a result of Horton's actions.  See N.Y. PENAL LAW § 120.10(1); Long, 2006 WL 1977435, at *10 (holding evidence sufficient to sustain first degree assault conviction where victim suffered a life-threatening gunshot wound); People v. Khuong v. Dinh Pham, 818 N.Y.S.2d 674 (3d Dep't 2006)(holding serious physical injury established where victim was shot in both legs and medical testimony confirmed that the victim suffered muscle damage and that the injuries could cause permanent complications); People v. McDuffie, 740 N.Y.S.2d 48 (1st Dep't 2002)(holding evidence sufficient to sustain first degree assault conviction where victim had difficulty using her arm as a result of the assault, the jury viewed the victim's permanent scars, and medical evidence established that the injuries created a substantial risk of death).

Finally, to the extent that Horton claims the proof was insufficient to show he was "the actual perpetrator," that claim also fails. <u>See</u> Pet. Attach. A at 2. Sealey and Simms both identified Horton as the shooter, and the jury was entitled to believe that testimony. <u>See</u>, <u>e.g.</u>, <u>United States v. Danzey</u>, 594 F.2d 905, 916 (2d Cir. 1979) ("[T]he testimony of a single, uncorroborated eyewitness is generally sufficient to support a conviction." ); <u>Roman v. Filion</u>, No. 04 Civ. 8022, 2005 WL 1383167, at *32 (S.D.N.Y. 2005)(holding that jury entitled to accept eyewitness testimony even though it contained inconsistencies).  This court may not reassess the jury's finding of credibility. <u>Roman</u>, 2005 WL 1383167 at *32.  This claim should be dismissed.

### C. Weight of the evidence

Horton next claims, as he did on direct appeal, that the verdict was against the weight of the evidence.  Pet. ¶ 12; Attach. A, at 2-3.  "Weight of the evidence" claims derive from New York Criminal Procedure Law ("CPL") § 470.15(5), which permits an appellate court in New York to reverse or modify a conviction where it determines "that a verdict of conviction resulting in a judgment was, in whole or in part, against the weight of the evidence." N.Y. CRIM. PROC. LAW § 470.15(5); <u>People v. Bleakley</u>, 69 N.Y.2d 490, 495 (1987).  This claim is grounded in the state criminal procedure statute, and, accordingly, it is not cognizable on habeas review.  <u>See</u> 28 U.S.C. § 2254(a) (permitting federal habeas corpus review only where the petitioner has alleged that he is in state custody in violation of "the Constitution or a federal law or treaty"); <u>Estelle,</u> 502 U.S. at 68 ("In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of

16

the United States."); <u>Lewis v. Jeffers</u>, 497 U.S. 764, 780 (1990) (holding that habeas corpus review not available to remedy alleged error of state law); <u>Hogan v. Livingston Corr. Facility</u>, No. 05-CV-6440, 2007 WL 2907322, at *8 (W.D.N.Y. Oct. 3, 2007)("Since a 'weight of the evidence' claim is purely a matter of state law, it is not cognizable on habeas review."); <u>Stein v. Artus</u>, No. 04-CV-0439, 2007 WL 2778914, at *7 (N.D.N.Y. Sept. 19, 2007)(same).   This claim should therefore be dismissed.


### D.  Sentence

Horton contends that the sentence imposed was harsh and excessive, and violated his Eighth Amendment right to be free from cruel and unusual punishment, because he received the maximum sentence even though he is twenty-one years old and a "first time offender." Pet. Attach. A at 1.  He also claims that the sentences on the assault charges should not have been ordered to run consecutively.  <u>Id</u>. at 3. Respondent counters that this claim is not cognizable for review because the sentence falls within the statutory range.  Dkt. No. 9, at 22-24.

It is firmly established that "[n]o federal constitutional issue is presented where, as here, the sentence is within the range prescribed by state law."  <u>White v. Keane</u>, 969 F.2d 1381, 1383 (2d Cir.1992); <u>Mayerhofer v. Bennett</u>, No. 02-CV-0074, 2007 WL 1624767, at *7 (N.D.N.Y. June 6, 2007).  Horton was convicted of three crimes. The trial court was authorized to sentence him to a maximum determinate term of twenty-five years, followed by five years postrelease supervision, for first degree assault and criminal use of a firearm.  N.Y. PENAL LAW §§ 70.02(1)(a), (3)(a); 120.10(1), 265.09.  The trial court was also authorized to sentence Horton to a

17

maximum determinate term of seven years for the reduced charge of second degree assault.  N.Y. PENAL LAW §§ 70.02(3)(c); 120.05(2).  While Horton was sentenced to the maximum term permissible for each crime, his sentence did not exceed it. Further, "consecutive sentences were appropriate under New York law" on the assault charges because Horton fired two shots, and different bullets hit Sealey and Simms.  See Rivera v. Duncan, No. 00 CIV 4923, 2001 WL 1580240, at *12 (S.D.N.Y. Dec. 11, 2001).

Horton's claim that the trial court abused its discretion when it imposed the maximum sentence because he was twenty-one years old and he was a "first time offender"[4] is not a federal claim subject to review by a habeas court because judges have the authority to exercise broad discretion when imposing sentences. See U.S. v. Booker, 543 U.S. 220, 223 (2005); Fielding v. LeFevre, 548 F.2d 1102, 1109 (2d Cir.1977). This is so even in circumstances where a petitioner, like Horton, is young and has few prior convictions. Townsend v. Burke, 334 U.S. 736, 741 (1948) ("The [petitioner's] sentence being within the limits set by the statute, its severity would not be grounds for relief here even on direct review of the conviction, much less on review of the state court's denial of habeas corpus." ); Valentine v. Lord, No 03 Civ. 4834, 2006 WL 1997708, at *4 (S.D.N.Y. Jul. 18, 2006)(rejecting argument that sentence harsh and excessive due to petitioner's youth when she committed the crime and her lack of a prior criminal record when it otherwise lies within the

---

[4]      Contrary to Horton's claim, the record shows that he was not a "first time offender."  This was Horton's first felony conviction, but he had an extensive juvenile record and several adult misdemeanor convictions.  See Dkt. No. 8, Exh. 3a, Sandoval Hearing, Mar. 28, 2002, at 2-25; Record on Appeal at 75-79.

prescribed statutory range); <u>Steele v. Filion</u>, 377 F. Supp. 2d 332, 337 (W.D.N.Y. 2005)(finding no abuse of discretion in imposing consecutive sentences where sentence within the applicable statutory range, even though petitioner had one prior misdemeanor conviction and positive factors in the pre-sentencing profile); <u>Davis v. Senkowski</u>, No. 97-CV-2328, 1998 WL 812653, at *8 (E.D.N.Y. Aug. 6, 1998) (rejecting argument that sentence was excessive in light of petitioner's youth and prior criminal record). Since the imposed sentence was within the statutory range, this theory cannot afford Horton relief.

Horton also claims that his sentence violated the Eighth Amendment.  That amendment, however, forbids only extreme sentences which are "grossly disproportionate" to the crime of conviction.  <u>Lockyer</u>, 538 U.S. at 72-73; <u>Harmelin v. Michigan</u>, 501 U.S. 957, 995 (1991). It is well-established that a sentence of imprisonment that is within the limits of a valid state statute is not cruel and unusual punishment in the constitutional sense.  <u>See</u> <u>White</u>, 969 F.2d at 1383; <u>Lou v. Mantello</u>, No. 98-CV-5542, 2001 WL 1152817, at *13 (E.D.N.Y. Sept. 25, 2001).  The Supreme Court has held that, for offenses less than manslaughter, sentences longer than twenty-five years are not grossly disproportionate.  <u>See</u> <u>Staubitz v. Lord</u>, 03-CV-0671, 2006 WL 3490335, at *2 (E.D.N.Y. Dec. 1, 2006)(citing <u>Ewing v. California</u>, 538 U.S. 11 (2003)(25 years to life for grand theft) and <u>Harmelin</u>, 501 U.S. 957 (1991)(holding that life in prison without the possibility of parole for cocaine possession)). Horton's sentence was not contrary to or an unreasonable application of that precedent.  Since the sentence imposed was plainly within the limits

authorized by statute, and was not grossly disproportionate to the crime of conviction, this ground of the petition should be denied.

## E.  Effectiveness of Trial Counsel

Horton claims that trial counsel was ineffective for not raising a justification defense, for not requesting a missing witness instruction, and for not arguing that the prosecutor failed to present exculpatory evidence to the grand jury.  Pet. at ¶ 12, Attach. B at 1-3; Attach. C at 1-5.  Respondent argues that this claim is procedurally barred and without merit.  Dkt. No. 9 at 25-44.

A defendant arguing ineffective assistance of counsel must show that counsel was not functioning as the counsel guaranteed by the Sixth Amendment.  Counsel's performance must have been deficient and that deficient performance must have prejudiced the defense.  Once this is shown, it cannot be said that the result of the proceeding is reliable.  United States v. DeJesus, 219 F.3d 117, 121 (2d Cir. 2000), (citing Strickland v. Washington, 466 U.S. 668,  687 (1984)).  A defendant must demonstrate that counsel's errors were so serious that the defendant was deprived of a fair trial and that there was a reasonable probability that, but for counsel's unprofessional errors, the results of the proceeding would have been different. Strickland, 466 U.S. at 686.

The proper measure of attorney performance is an objective standard of reasonableness in the totality of the circumstances under prevailing professional norms.  Id. at 688; Purdy v. United States, 208 F.3d 41, 44 (2d Cir. 2000).  Strategic choices made after investigation of the relevant law and facts are normally not subject

to challenge and the reviewing court must be "highly deferential" to counsel's performance. Strickland, 466 U.S. at 688. Additionally, state court findings on such matters are conclusive on the court reviewing the habeas petition if supported in the record. 28 U.S.C. § 2254(d); Sumner v. Mata, 455 U.S. 591, 592 (1982).

### 1. Trial Counsel - Procedural Bar

Horton did not raise the claim that trial counsel was ineffective on direct appeal, but included this claim in his motion to vacate conviction pursuant to CPL § 440.10. See Dkt. No. 8, Ex. 3e. The state court denied this claim on the ground that it could have been raised on direct appeal but was not and was, therefore, barred by CPL § 440.10(2)(c). See Dkt. No. 8, Ex. 3g, at 2-3. A denial of a claim under CPL § 440.10(2)(c) rests on an adequate and independent state ground, and the claim is therefore procedurally barred. Aparicio, 269 F.3d at 91. That the Appellate Division also addressed the merits of the claim does not change that result. Fama, 235 F.3d at 810 n. 4; Glenn v. Bartlett, 98 F.3d 721, 724-25 (2d Cir. 1996).

This claim can be reviewed if Horton demonstrates cause for the default and actual prejudice, or that the failure of the federal habeas court to review the claim would result in a fundamental miscarriage of justice because he is actually innocent. Coleman, 501 U.S. at 748-740; DiGuglielmo, 366 F.3d at 135.

Horton alleges two grounds for cause. First, he contends that the state court incorrectly applied the procedural bar to his ineffectiveness claim because, had he raised the claim on direct appeal, the Appellate Division would have declined to review it. Pet., Attach. C at 1-4. This argument fails, however, because the trial

court properly applied the procedural bar to Horton's ineffectiveness claim, which could have been reviewed and decided on the merits based upon the face of the record.  See Hogan v. West, 448 F. Supp. 2d 496, 507 (W.D.N.Y. 2006)("Because there is no reason to believe that the trial record was in any way insufficient to allow the Appellate Division to hear an ineffective assistance of counsel claim based on the failure to object to the prosecutor's summation, any attempt by [petitioner] to seek state court review pursuant to C.P.L. § 440.10 would be futile."); Garcia v. Scully, 907 F. Supp. 700, 706-707 (S.D.N.Y. 1995)("When particular claimed instances of trial counsel error are matters as to which the record is already clear, however, the claim can be reviewed by the appellate court and should be raised on direct appeal.").

        Horton's second ground for cause is that appellate counsel was ineffective for failing to challenge trial counsel's effectiveness on direct appeal.  Pet. Attach. C, at 5. The ineffectiveness of counsel for not raising or preserving a claim in state court will be sufficient to show cause for a procedural default only when counsel was so ineffective that the representation violated the petitioner's Sixth Amendment right to counsel.  Edwards v. Carpenter, 529 U.S. 446, 451 (2000); Aparicio, 269 F.3d at 91. Horton's claim that appellate counsel was ineffective is not pleaded as a ground for habeas relief, and is unexhausted because he did not raise this claim in a state coram nobis petition.  Garcia, 907 F. Supp. at 706-707 ("The only procedure in New York [for presenting a claim of appellate counsel ineffectiveness] is an application for a writ of error coram nobis to the Appellate Division department that affirmed the conviction."); People v. Bachert, 69 N.Y.2d 593, 598-99 (1987)(holding that appellate

counsel ineffectiveness claims must be raised in writ of error coram nobis).  In any event, Horton's claims of trial counsel ineffectiveness are meritless (See II(E)(3), infra), and appellate counsel cannot be ineffective for failing to raise a meritless claim on direct appeal.  Evitts v. Lucey, 469 U.S. 387, 394 (1985); Jones v. Barnes, 463 U.S. 745, 751-52 (1983).  Because Horton's contention that appellate counsel was ineffective is meritless, it may not serve as "cause" for a procedural default.  Aparicio, 269 F.3d at 91-92.  Accordingly, the procedural default bars federal review of Horton's claim.

## 2.  Request for Stay

Although Horton has not pleaded a claim of appellate counsel ineffectiveness as a ground for habeas relief, he asks this court to stay his habeas petition to permit him to exhaust that claim in an effort to establish cause for the procedural default. Dkt. No. 1, Pet., Attach. C at 5.

Stays of habeas petitions should be granted in limited circumstances and only "if the petitioner had good cause for his failure to exhaust, his unexhausted claims are potentially meritorious, and there is no indication that the petitioner engaged in intentionally dilatory litigation tactics." Rhines v Weber, 544 U.S. 269, 278 (2005). Good cause to justify a stay is similar to cause in the procedural default context, and generally must arise from "external factors, not petitioner's own decisions."  Ramdeo v. Phillips, 2006 WL 297462, at *6 (E.D.N.Y. Feb. 8, 2006).  While ineffectiveness of appellate counsel can constitute good cause, it is an abuse of discretion to grant a stay where that claim is "plainly meritless." Brown v. Ebert, No. 05 Civ. 5579, 2006

23

WL 1273830, at *3 (S.D.N.Y. May 9, 2006); see also Aessa v. Annetts, No. 06 CV

5830, 2006 WL 3780392, at *2 (E.D.N.Y. Dec. 21, 2006)(explaining that a claim of

appellate counsel ineffectiveness "itself suffices to show good cause," but claims not

sufficiently developed to analyze whether the claims were "plainly meritless");

Ramchair v. Conway, No. 04-CV-4241, 2005 WL 2786975, at *17-18 (E.D.N.Y. Oct.

26, 2005)(granting stay where ineffectiveness of counsel claim established cause,

and the claim was found to be meritorious).

Here, Horton has not shown good cause for the failure to exhaust his

ineffectiveness of appellate counsel claim.  Although he is aware that this claim must

be raised in a state coram nobis petition in order to be properly exhausted (See Pet.

Attach. C at 5), Horton failed to file such a petition, and offers no explanation for that

failure.  Moreover, appellate counsel's alleged ineffectiveness "can only excuse

[Horton's] failure to raise the ineffective assistance of trial counsel argument on

appeal," but it would "not explain [Horton's] failure to file a petition for a writ of error

coram nobis asserting ineffective assistance of appellate counsel."  Scott v. Phillips,

No. 05-CV-0142, 2007 WL 2746905, at *6 (E.D.N.Y. Sept. 19, 2007).  Accordingly,

Horton's failure to file a writ of error coram nobis is not excused by appellate

counsel's failure to raise the effectiveness of trial counsel on appeal.  Id.

In any event, even if Horton showed good cause, his claim that appellate

counsel was ineffective is not "potentially meritorious."  Rhines, 544 U.S. at 278;

Scott, 2007 WL 2746905, at *7.  When challenging the effectiveness of appellate

counsel, a petitioner must show that counsel "omitted significant and obvious issues

while pursuing issues that were clearly and significantly weaker." Mayo v. Henderson,

24

13 F.3d 528, 533 (2d Cir. 1994); Clark v. Stinson, 214 F.3d 315, 322 (2d Cir. 2000).

Horton must show more than counsel's failure to raise a non-frivolous argument, as

counsel is required to use professional judgment when deciding to concentrate on a

few key issues while eliminating weaker arguments, and is not required to advance

every argument urged by the petitioner.  Evitts, 469 U.S. at 394; Jones, 463 U.S. at

751-52.  Appellate counsel filed a sixty-five page brief in which she raised and fully

analyzed three issues.  Her choices proved successful when the Appellate Division

agreed with her argument that the evidence was not sufficient to sustain one count of

first degree assault.  See Dkt. No. 8, Exh. 3a, c.  Appellate counsel likely recognized

that there was no merit to Horton's claim that trial counsel was ineffective, and acted

reasonably in not raising this issue on appeal.  See II(E)(3), infra; Evitts, 469 U.S. at

394; Jones, 463 U.S. at 751-52.  Horton's claim that appellate counsel was

ineffective would not likely succeed even if Horton pursued it in state court and his

request for a stay is denied.

### 3.   The Merits

Even if Horton's claim that trial counsel was ineffective was not procedurally

barred, it is without merit.  A review of the record indicates that Horton's trial counsel

properly represented him in all respects.  Counsel's theory of the case was

misidentification. T. 185-88.  In support of that theory, counsel elicited testimony from

the victims that they did not immediately identify Horton as the shooter and suggested

that Sherrod Craft was the real perpetrator.  T. 339, 343, 346, 471, 495-96, 579-80,

640-71.  Counsel vigorously cross-examined the prosecution's witnesses.  T. 199,

217-18, 249-55, 257, 270-72, 295, 338-55, 402-17, 442, 477-79, 482, 495, 571-80.

Counsel called Jessica Robillard as a witness in an attempt to discredit Rebecca

Robinson's testimony that Horton confessed to the shootings.  T. 613-27.  Counsel's

representation resulted in an acquittal on three of the charges, including attempted

murder.  T. 758-64.

Nonetheless, Horton claims that counsel was ineffective for not raising a

justification defense.  See Pet. Attach. C at 1. Counsel's decision regarding whether

to pursue a particular defense is a tactical choice that is "virtually unchallengable."

Wiggins v. Smith, 539 U.S. 510, 521-22 (2003); see also Campbell v. Greene, 440 F.

Supp. 2d 125, 150 (N.D.N.Y. 2006), (quoting Nieves v. Kelly, 990 F. Supp. 255, 264

(S.D.N.Y. 1997)).  As the state court noted, a justification defense would have been

inconsistent with, and undermining to, counsel's theory that Simms and Sealey were

not credible and had misidentified Horton as the shooter.  Dkt. No. 8, Exh. 3g, at 3-4.

See, e.g.,  Pratt v. Upstate Corr. Fac., 413 F. Supp. 2d 228, 243 (W.D.N.Y. Feb. 9,

2006)(holding that justification defense implausible where chosen defense was that

petitioner did not shoot the victim, and counsel "essentially would be presenting a

defense of, 'defendant didn't shoot anyone, but if you don't believe that, then he was

justified in doing it.'").

Further, as the state court also found, the evidence did not support a

justification defense.  See Dkt. No. 8, Exh. 3g, at 3.  Under New York law, a defendant

is entitled to a justification defense when he "reasonably believes" that another person

is using or is about to use deadly physical force against him.  N.Y. PENAL LAW §

35.15(2)(a).  A defendant may not, however, use deadly force if he knows that he can

26

retreat with complete safety.  Id.  There was no evidence at trial that either Simms or

Sealey were armed or that Horton tried to retreat before using deadly force.  See Dkt.

No. 8, Exh. 3g, at 3; T. 318.  To the contrary, the evidence showed that Horton

instigated the shooting.  When Horton refused to fight without his gun, Simms and

Sealey left, but Horton followed them.  T. 319-20, 349, 351, 453, 457.  It was not until

Horton threatened to kill Simms and Sealey that Sealey and Horton engaged in a

physical scuffle.  T. 321, 461.  Furthermore, rather than retreating after firing two

shots, Horton fired a third shot, even though Sealey and Simms had both fallen to the

ground.  T. 324-25, 465.

       The state court's conclusion that the evidence did not support a justification

defense and, accordingly, that trial counsel was not ineffective for failing to pursue it,

was not contrary to or an unreasonable application of clearly established federal law.

See Rivera v. Ercole, No. 07 Civ. 3577, 2007 WL 2706274, at *24-26 (S.D.N.Y. Sept.

18, 2007)(collecting cases on justification defense in New York and rejecting claim

that trial counsel was ineffective for not pursuing a justification defense where there

was no evidence that the victim was armed or about to use deadly force against

petitioner); Perez v. Greiner, No. 01 Civ. 7140, 2003 WL 21203351, at *5 (S.D.N.Y.

May 21, 2003)(rejecting claim that trial counsel was ineffective for not pursuing a

justification defense where there was no evidence in the record that the victim was

using or about to use deadly force or that petitioner could not retreat safely).

       Horton next claims that trial counsel was ineffective for not requesting a

missing witness instruction.  Pet. Attach. B at 2.  Horton raised this claim in his CPL

440 motion, arguing that trial counsel should have requested a missing witness

charge for Detective McKenna and Minnie Foulks because these witnesses would have provided testimony that supported his defense of misidentification.  Dkt. No. 8, Exh. 3e, Mem. at 11, 13. Horton argued that Foulks told police that the shooter was a dark-skinned black male but that he is light-skinned.  Id.  He also argued that Simms told Detective McKenna the night of the shooting that he did not know who shot him. Id.  The state court rejected this claim, finding that there had been no showing that Horton would be entitled to a missing witness charge.  Dkt. No. 8, Exh. 3g at 4.

Under New York law, Horton would have to show that these witnesses were knowledgeable about issues material to the trial, that each witness was expected to give non-cumulative testimony favorable to the prosecution, and that the witnesses were available to the prosecution.  Farr v. Greiner, No. 01 CR 6921, 2007 WL 1094160, at *13 (E.D.N.Y. Apr. 10, 2007); People v. Macana, 84 N.Y.2d 173, 196 (1994); People v. Gonzalez, 68 N.Y.2d 424, 427 (1986).  Horton has not set forth any evidence that McKenna and Foulks would have provided favorable testimony for the prosecution.  In fact, his argument is exactly the opposite - that they would provide testimony that would support Horton's misidentification defense. See Moore v. West, No. 03-CV-0053, 2007 WL 1302426, at *18 (N.D.N.Y. May 1, 2007) (holding that petitioner's claim that he was improperly denied a missing witness charge did not provide grounds for habeas relief where petitioner failed to show, among other things, that the witness would have testified favorably for the prosecution).

In any event, Simms testified that he did not initially tell police who shot him (T. 471), making any testimony by McKenna that Simms did not identify the shooter the

night of the incident cumulative.  See Patterson v. Pool, No. 02 Civ. 5389, 2004 WL

1874967, at *4 (S.D.N.Y. Aug. 18, 2004) (holding that trial counsel was not ineffective

for failing to request a missing witness charge where a police officer had no non-

cumulative testimony to provide).  Furthermore, Detective Ryan testified that Foulks

described the shooter as "short" and "dark-skinned."  T. 573-74.  Trial counsel cross-

examined Detective Ryan regarding the description Foulks provided of the shooter,

pointing out that it was apparently inconsistent with Horton's appearance.  T. 572-76.

Thus, since counsel cross-examined Detective Ryan regarding the inconsistency and

Foulks's testimony would have been cumulative, Horton did not suffer prejudice when

counsel did not request a missing witness charge.  See Lebron v. Girdich, No. 03 CIV.

2765, 2003 WL 22888809, at *5 (S.D.N.Y. Dec. 5, 2003)(holding that trial counsel

was not ineffective for failing to request a missing witness charge to explain the

absence of a detective where counsel, through cross-examination of the detective's

colleague, presented the jury with the alleged inconsistent testimony).

     Finally, Horton claims that the prosecutor failed to present exculpatory

evidence to the grand jury, and that trial counsel was ineffective for failing to address

this claim.  Pet. Attach. B at 3-4.  Horton appears to be arguing that Foulks's

description of the shooter exculpated him, and the prosecutor should have presented

it to the grand jury.  Id.  The state court rejected this claim, correctly noting that a

prosecutor is not required to present to the grand jury exculpatory evidence.  See,

e.g., United States v. Williams, 504 U.S. 36, 55 (1992)(holding that since the grand

jury is not required to consider exculpatory evidence, prosecutor was not under a

binding obligation to present it, and, accordingly, a federal court lacks the power to

dismiss an indictment on the ground that the prosecutor did not present exculpatory evidence to the grand jury); Jones v. Keane, 250 F. Supp. 2d 217, 232-33 (W.D.N.Y. 2002)("requiring the prosecutor to present exculpatory evidence to the grand jury would impose an unnecessary burden on the grand jury system."); People v. Lancaster, 69 N.Y.2d 20, 26 (1986)(holding that a prosecutor is not required to "present all evidence in their possession that is favorable to the accused even though such information undeniably would allow the grand jury to make a more informed determination.").  Counsel cannot now be deemed ineffective for failing to make a meritless argument.  United States v. Arena, 180 F.3d 380, 396 (2d Cir. 1999).

To the extent that Horton is challenging the propriety of the grand jury proceedings, that claim also fails.  The Second Circuit has explicitly held that a claim that the prosecutor failed to present exculpatory evidence to the grand jury is not cognizable on habeas review.  See Lopez v. Riley, 865 F.2d 30, 32-33 (2d Cir. 1989)("[t]he particular claims of impropriety before the grand jury in this case concern the sufficiency of the evidence, a failure to develop exculpatory evidence by the prosecutor, the presentation of prejudicial evidence and error in explaining the law" were all cured by petitioner's conviction by a jury at trial and, therefore, were not cognizable on habeas review); see also Van Stuyvesant v. Conway, No. 03 Civ. 3856, 2007 WL 2584775, at *25 (S.D.N.Y. Sept. 7, 2007)(citing Lopez); Dexter v. Artuz, No. 01-CV-237, 2007 WL 963204, at *9 (N.D.N.Y. Mar. 27, 2007)(same).   Horton's subsequent conviction by a jury (T. 758-61) cured any arguable defects in the indictment process "because the trial conviction establishes probable cause to indict and also proof of guilt beyond a reasonable doubt."  Montalvo v. Annetts, 02 Civ.

1056, 2003 WL 22962504, at *17 (S.D.N.Y. Dec. 17, 2003); see also United States v. Mechanik, 475 U.S. 66, 69 (1986) ("[t]he petit jury's subsequent guilty verdict means not only that there was probable cause to believe that the defendants were guilty as charged, but also that they are in fact guilty as charged beyond a reasonable doubt."); Davis v. Mantello, 42 Fed. Appx. 488, 490-91 (2d Cir. 2002) ("Claims of deficiencies in state grand jury proceedings are not cognizable in a habeas corpus proceeding in federal court." ).

In sum, Horton fails to demonstrate that he was prejudiced by any of the alleged ineffective assistance or that the result of the trial could not be relied upon. He also has not established that trial counsel's performance was constitutionally deficient.  Strickland, 466 U.S. at 687.  Therefore, the petition on this ground should be denied.


### III. Conclusion

WHEREFORE, based upon the foregoing, it is hereby

**RECOMMENDED** that the petition for a writ of habeas corpus (Dkt. No. 1) be **DENIED** and **DISMISSED**.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have ten days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. FAILURE TO OBJECT TO THIS REPORT WITHIN TEN (10) DAYS

WILL PRECLUDE APPELLATE REVIEW. 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72,

6(a), 6(e); <u>Roldan v. Racette</u>, 984 F.2d 85 (2d Cir.1993) (<u>citing</u> <u>Small v. Sec'y of</u>

<u>Health and Human Servs</u>., 892 F.2d 15 (2d Cir.1989)).


DATED:  December 10, 2007
        Albany, New York

_____
United States Magistrate Judge